UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WESLEY WILLIAMS,<br><br>              Plaintiff,<br><br>        v.<br><br>THOMPSON, *et al.*,<br><br>              Defendants. | Case No. 1:19-cv-00330-AWI-CDB (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND DISMISS CASE WITHOUT PREJUDICE<br><br>(Doc. 97)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff John Wesley Williams is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. At all relevant times, Plaintiff was housed at California State Prison–Corcoran. This action proceeds on the following claims: (1) a First Amendment retaliation claim against Thompson, Houston, Schomaker, Cristales, and Hackworth; (2) an Eighth Amendment deliberate indifference claim against Thompson, Houston, Schomaker; (3) an Eighth Amendment medical indifference claim against Rabino-Burns, Cristales, and Perez; and (4) an Eighth Amendment excessive force claim against Scalia, Cristales, and Perez.[1]  (Doc. 24.)

---

[1] Defendants have advised that Plaintiff incorrectly named Defendant Cristales as "Castalas," Defendant Rabaino Burns as "Robinson," Defendant Schomaker as "Shoemaker," Defendant Scalia as "Scally," and Defendant Hackworth as "Hawthorne."  (Doc. 97 at 6 n.1.) The Court has dismissed CO Diaz, Burns, and CO Madrigal as defendants.  (Docs. 13, 16, 24.)

On September 3, 2021, Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies before filing suit. (Doc. 97.) Plaintiff filed a response in opposition, and Defendants filed a reply to Plaintiff's response. (Docs. 99, 100.) Defendants' motion for summary judgment has been submitted upon the record without oral argument pursuant to Local Rule 230(*l*). The Court recommends that Defendants' motion for summary judgment, (Doc. 97), be granted and the case dismissed without prejudice.

I.  **LEGAL STANDARDS**

   **A. Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party's assertion that a fact is disputed or cannot be disputed must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (applying standard to § 1983 claim).

The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party may accomplish this by presenting evidence that negates an essential element of the non-moving party's case. *Id.* Alternatively, the movant can demonstrate that the non-moving party cannot produce evidence to support an essential element of his claim that must be proven at trial. *Id.*; Fed. R. Civ. P. 56(c)(1)(B). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

If the moving party meets this initial showing, the burden shifts to the non-moving party

to establish "specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 323. This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. The non-moving party cannot simply rely on the pleadings and conclusory allegations in an affidavit. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 324. Instead, the opposing party is required to tender evidence of specific facts in the form of affidavits or admissible discovery material. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986). In attempting to show a factual dispute, the opposing party need not prove a material fact conclusively in her favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (internal quotation omitted). However, when deciding a motion for summary judgment, the court must view any inferences drawn from the underlying facts in a light most favorable to the non-moving party. *Id.*

The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at 872. Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

3

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory, and a prisoner may not file a complaint raising unexhausted claims. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("[A] prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint is tendered to the district court."). The Ninth Circuit has "made clear that '[e]xhaustion requirements apply based on when a plaintiff files the operative complaint, in accordance with the Federal Rules of Civil Procedure." *Saddozai v. Davis*, 35 F.4th 705, 708 (9th Cir. 2022) (quoting *Jackson v. Fong*, 870 F.3d 928, 935 (9th Cir. 2017)). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Under the PLRA, exhaustion is "mandatory" and requires the prisoner to complete the administrative review process in "compliance with deadlines and other critical procedural rules, with no exceptions for special circumstances." *Ramirez v. Collier*, 594 U.S. —, 142 S. Ct. 1264, 1275, 212 L. Ed. 2d 262, (2022) (internal quotation marks omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006); *Ross v. Blake*, 578 U.S. 632, 635 (2016)). The rules that must be followed, the level of detail necessary in a grievance, and the boundaries of proper exhaustion are defined by the prison's grievance procedures and not the PLRA. *Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2022) (quoting *Ross*, 578 U.S. at 643–44).

An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. *Woodford*, 548 U.S. at 90. However, a grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. *Jones*, 549 U.S. at 204. "[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (quoting *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010)). The exhaustion requirement allows prison

officials to have an opportunity to resolve disputes before the filing of a court action against them. *Jones*, 549 U.S. at 204.

The failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove. *Id.* at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). On a motion for summary judgment, the defendant bears the initial burden of proving (1) the existence of an available administrative remedy, and (2) the plaintiff failed to exhaust that remedy. *Id.* at 1172. If the defendant makes this showing, the burden shifts to the prisoner to present "evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citing *Hilao v. Estate of Marcos,* 103 F.3d 767, 778 n.5 (9th Cir.1996)).

A remedy is available if it "capable of use for the accomplishment of a purpose" or "is accessible or may be obtained." *Eaton*, 50 F.4th at 1245 (quoting *Ross*, 578 U.S. at 642). The Supreme Court has recognized three circumstances in which administrative remedies are effectively unavailable: (1) when the grievance system "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the system is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Eaton*, 50 F.4th at 1245 (quoting *Ross*, 578 U.S. at 643–44).

The Ninth Circuit has found administrative remedies effectively unavailable in several other circumstances. *Eaton*, 50 F.4th at 1245 (citing *Fordley v. Lizarraga*, 18 F.4th 344, 358 (9th Cir. 2021) (holding that a prison's failure to respond to an emergency grievance for several months in contravention of its own deadlines rendered administrative remedies unavailable); *Sapp*, 623 F.3d at 823 (holding that a prison's improper screening of a grievance renders administrative remedies effectively unavailable); *Nunez v. Duncan,* 591 F.3d 1217, 1226 (9th Cir. 2010) (holding that an inmate was excused from the exhaustion requirement where the inmate was unable to access a policy necessary to bring a timely administrative appeal); *Albino*,

747 F.3d at 1177 (holding that an inmate is excused from failure to exhaust where he was unable to access information about the administrative grievance process); *Marella v. Terhune*, 568 F.3d 1024, 1026 (9th Cir. 2009) (holding that an inmate is excused from non-exhaustion of administrative remedies where he is unable to obtain the form necessary to submit a grievance)).

If the court finds that remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust available remedies should be excused, the motion for summary judgment is denied and the case proceeds to the merits. *Albino*, 747 F.3d at 1171. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1172. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

### C. CDCR Grievance Process

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoners to appeal any policy, decision, action, condition, or omission by the department or staff having an adverse effect on prisoner health, safety, or welfare. Cal. Code Regs. tit. 15, § 3084.1(a) (2019).[2] Compliance with 42 U.S.C. § 1997e(a) requires California state prisoners to use CDCR's grievance process to exhaust their claims prior to filing a complaint in court. *See Sapp*, 623 F.3d at 818; *see also Woodford*, 548 U.S. at 85, 86 (treating § 3084.1 as "mandatory").

In 2019, the year relevant to Plaintiff's claims, California regulations required that inmates pursue administrative grievances through three levels of review in order to exhaust administrative remedies. Cal. Code Regs. tit. 15, §§ 3084.1(a), 3084.7(d)(3). To appeal an action or decision, an inmate must submit to the appeals coordinator a form CDCR 602 inmate appeal ("602") within thirty days of the action or decision being appealed or upon first knowledge of the action or decision. *Id.*, §§ 3084.2(a), 3084.8(b). The 602 must describe the specific issue

---

[2] Effective June 1, 2020, the new rules are set out in Cal. Code Regs. tit. 15, §§ 3480–3486. For purposes of these findings and recommendations, all citations refer to the version of the regulations effective at times relevant to Plaintiff's claims.

6

under appeal and the relief requested; list all staff members involved and describe their involvement in the issue; and provide supporting documents. *Id.*, §§ 3084.2(a), 3084.3. Prison officials must file a response within thirty days. *Id.*, § 3084.8(c)(1)–(c)(2). The cancellation or rejection of an appeal at any level does not exhaust the appeal. *Id.*, § 3084.1(b).

Inmates could submit health care grievances regarding heath care policies, decisions, actions, conditions, or omissions on a form CDCR HC 602 ("HC 602"). *Id.*, §§ 3999.226, 3999.227(a). Health care grievances were subject to two levels of review: an institutional level of review and a headquarters level of review. *Id*. § 3999.226(a)(1). Inmates were required to submit 602 HCs to the Healthcare Grievance Office. (Abernathy Decl., Doc. 97-1, ¶ 8.) The Health Care Correspondence and Appeals Branch ("HCCAB"), of California Correctional Health Care Services receives, reviews, maintains, and renders decisions on all health care appeals/grievances at the headquarters—or final—level or review. (*Id.* at ¶ 3.) Health care grievances are subject to a headquarters' disposition before administrative remedies are deemed exhausted. Cal. Code Regs. tit. 15, § 3999.226(g).

## II. UNDERLYING FACTUAL ALLEGATIONS[3]

### A. Placement in Mental Health Crisis Bed

At all times relevant to this action, Plaintiff was a civil detainee housed at California State Prison in Corcoran, California ("Corcoran"), and a participant in the Enhanced Outpatient Program ("EOP"), which provides care to inmates with grave mental disabilities. Plaintiff is an exhibitionist with major depression and a cutting disorder.

On February 9, 2019, Plaintiff engaged in self-injurious cutting after finding a razor in his cell. From February 10, 2019, to February 18, 2019, Plaintiff was held in a mental health crisis bed under the care of Defendants Thompson, Houston, and Schomaker. On February 15, 2019, Plaintiff was discovered masturbating by non-party Dr. Romeo. This incident distressed Plaintiff, causing him to cut himself more.

---

[3] These factual allegations are derived from the complaint and the Court's screening order. (Docs. 1, 13.) These are not findings of fact by the Court.

On February 19, 2019, Plaintiff was taken before an Interdisciplinary Treatment Team ("IDTT"). Plaintiff claims that Defendant Thompson was personally offended by Plaintiff's exhibitionism and focused on the February 15, 2019, incident. Plaintiff complained that the IDTT members were not addressing his mental health care concerns, and when he indicated that he intended to file an inmate grievance, Defendant Thompson ordered Defendants Houston and Schomaker "to act in concert to exclude plaintiff from mental health treatment." Plaintiff was ordered discharged from the mental health crisis bed.

**B.      Transfer to Administrative Segregation**

Defendants Thompson, Houston, and Schomaker arranged for CO Scalia and CO Madrigal to escort Plaintiff to administrative segregation ("ad-seg"), where Plaintiff had experienced a prior incident of abuse and lack of mental health treatment. Plaintiff asserts that Defendant Houston knew ad-seg was dangerous to Plaintiff, since Defendant Houston had intervened on Plaintiff's behalf during this prior incident. When Plaintiff reminded Houston and the others of this prior incident, they ignored Plaintiff and ordered him to ad-seg.

Once Plaintiff was taken to ad-seg, CO Scalia forcefully pushed Plaintiff into the holding cage, causing Plaintiff's torso and head to slam into the back wall. Sgt. Hackworth told Plaintiff, "[T]he doctors told me how to handle you. Your [*sic*] in the right place to play your suicidal games." Sgt. Hackworth then directed CO Scalia and CO Madrigal to "spray his ass" if Plaintiff cut himself. CO Scalia removed all of Plaintiff's legal papers and said, "back here, all litigations against department staff is considered contraband." When Plaintiff said, "that's not a rule," CO Scalia responded, "I will beat on your face and won't stop until its nice and bloody if you don't shut up, ask any inmate back here if you don't believe me."

CO Cristales arrived and, after speaking with CO Scalia, placed Plaintiff in a cell where Plaintiff found a piece of broken glass and used it to cut his wrist to relieve anger and distress. Panicked by the blood, Plaintiff sought help from CO Cristales. Instead of helping, Cristales sprayed Plaintiff with pepper spray while yelling "black j-cat motherfucker."[4] CO Perez arrived and also pepper sprayed Plaintiff.

---

[4] "J-Cat" is a derogatory term used to describe or identify seriously mentally ill inmates.

8

The COs removed Plaintiff from the cell and placed him in a holding cage for one to two hours with no medical care or decontamination from the pepper spray. When Plaintiff asked psychiatric technician Burns for medical help, Burns refused to enter the cage because "hundreds of other inmates' fluids [are] all over them so I'm not comming [*sic*] near them to treat your open wound, just don't let your wound touch the cage." Plaintiff then asked to rinse off the pepper spray, but Burns said, "they say your [*sic*] fine so I'm not gonna order that." Plaintiff alleges that Burns then falsified medical records to indicate that Plaintiff was allowed decontamination and given instructions on how to do so.

CO Cristales arrived at the holding cage and said to Plaintiff: "[T]he sergeant said if you keep threatening to file a 602 appeal to leave you in here so if you want to get out stop asking to write an appeal." Plaintiff was then rehoused in the same contaminated cell and was in constant pain all night. Plaintiff claims that "[t]his is a practice ratified by defendant Burns in his supervision and command over ad-seg, a practice directed towards inmates with mental illnesses."

On February 20, 2019, Plaintiff was again admitted to the MHCB to decontaminate. However, the February 19 discharge order following the IDTT hearing remained in effect.

**C.     Procedural History**

Although the complaint was received and docketed by the Clerk on March 11, 2019, the complaint was effectively filed on March 4, 2019. (Doc. 1 at 14.) Pursuant to the prison mailbox rule, a pleading filed by a *pro se* prisoner is deemed to be filed as of the date the prisoner delivered it to the prison authorities for mailing to the Clerk of Court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1108–09 (9th Cir. 2009) (mailbox rule articulated in *Houston* applies to civil rights actions).

On July 12, 2021, Plaintiff filed a motion for leave to file an amended complaint and lodged an amended civil rights complaint. (Docs. 87, 88.) The proposed amendment was to add claims against Kathleen Allison as Secretary of the California Department of Corrections and Rehabilitation and Martin Gamboa, Chief Deputy Warden and Associate Warden at Corcoran. (*See* Doc. 88.) The proposed pleading did not include allegations concerning the submission of

9

grievances and the prison officials' responses. On September 29, 2021, the Court denied the motion, finding that Plaintiff could not maintain claims against Allison and Gamboa and concluding the proposed amendments are futile. (Doc. 101.)

On September 3, 2021, Defendants filed the instant motion for summary judgment. (Doc. 97.) In support of their motion, Defendants submit the deposition of Plaintiff, (Doc. 97-3), and the declarations of K. Abernathy, Chief (A) of the HCCAB (Doc. 97-1); Howard E. Moseley, Associate Director, Office of Appeals, (Doc. 97-2); and J. Mendez, Correctional Counselor II and Supervisor for the Office of Grievance ("OOG") (Doc. 97-4).[5] In opposition, Plaintiff submits his declaration attached to his response and his verified complaint. (*See* Doc. 87, 1.)

### III.   DISCUSSION

#### A.   Plaintiff's Administrative Appeals[6]

In the course of his incarceration, Plaintiff submitted hundreds of institutional grievances and exhausted them through the third level of review. (Moseley Decl., ¶ 6, Exh. 1; Pl. Dep. at 141:8–12.) In the year and a half preceding the incidents at issue, Plaintiff also filed at least thirty-six health care grievances. (Abernathy Decl., ¶ 9, Exh. 1.)

On February 25, 2019, Plaintiff completed a Form 22 and attached grievance against Hackworth, Scalia, Cristales, Perez, and nonparty Sgt. Torres. (Mendez Decl., ¶ 12(a), Exh. 1.) This grievance was assigned Grievance Log No. CSPC-8-19-04492. (*Id.*) The grievance included allegations that (1) on February 7, 2019, Sgt. Torres (not a defendant in this action) hit Plaintiff in the lower back after Plaintiff cut his own wrist; (2) on February 19, 2019, while Defendant Hackworth watched, Defendant Scalia pushed Plaintiff into a cell and threatened to beat him more, and on the same day, Defendant Cristales and Defendant Perez pepper sprayed Plaintiff after he cut himself with something he found in the cell and was bleeding; and (3) Plaintiff was removed from the cell, denied decontamination, and then placed back in the same

---

[5] Defendants filed a statement of undisputed facts ("SUF") in accordance with Local Rule 260(a). (Doc. 97-6.) Despite Defendants' advisement that Local Rule 260(b) required Plaintiff to reproduce the itemized facts in the SUF and admit or deny them, (Doc. 97-5), Plaintiff did not file such a document. Instead, Plaintiff relies on his own declaration and the verified complaint. Given the interest in resolution of cases on the merits, the Court deems Plaintiff's filings sufficient to oppose Defendants' SUF.

[6] Plaintiff does not appear to dispute Defendants' summary of Plaintiff's appeals on file.

1  cell. (Mendez Decl., ⁋ 12(a), Exh. 1.) Plaintiff alleges that COs White, Perez, and Cristales attempted to obstruct the submission of Plaintiff's Form 22 and grievance. However, Sgt. J. League signed the Form 22 and Form 1858 attached to the grievance on the same day.

Grievance Log No. CSPC-8-19-04492 did not include any reference to the Defendants Thompson, Houston, or Schomaker; any actions by an IDTT on February 19, 2019; acts of retaliation against Plaintiff by Defendant Hackworth or Defendant Cristales; threats or comments about Plaintiff filing grievances by Defendant Hackworth; or the statement by Defendant Hackworth to Cristales to keep Plaintiff in a cage if Plaintiff kept threatening to file appeals. (Mendez Decl., ⁋ 12(a), Exh. 1.)

Because an inmate appeal is limited to one issue or a related set of issues, Cal. Code Regs., tit. 15, § 3084.2(a)(1), the unrelated issues in Log No. CSPC-8-19-04492 were separated into different grievances as follows:

(1) The allegations regarding Sgt. Torres's actions on February 7, 2019, was reassigned to Log No. COR 2140-19-301/CSPC-8-19-04582. On December 24, 2019, this grievance was denied at the second level of review, and then it was denied at the third level of review on April 21, 2020, exhausting Plaintiff's claim. (Moseley Decl., ⁋ 9, Exh. 2, Doc. 97-2 at 42–43, 34–35);

(2) The allegations against Officer Scalia, Cristales, Hackworth, and Perez were reassigned to Log No. COR 2140-19-076/CSPC-8-19-04583. (Mendez Decl., ⁋ 12(a), Exh. 1). This appeal was denied at the second level on February 14, 2020, and at the third level on February 19, 2021. (Abernathy Decl. at 57; Moseley Decl., ⁋ 10, Exh. 4, Doc. 97-2 at 57.);

(3) The remaining issues regarding Plaintiff's health care forwarded to the Health Care Grievance Coordinator, and the grievance was reassigned Log No. COR HC 19000770. (Mendez Decl., ⁋ 12(a), Exh. 1; Abernathy Decl., ¶ 10.) This appeal was considered a health care staff complaint and reassigned Log No. COR SC 19000151. (Abernathy Decl., ¶ 10; Exh. 2.) The appeal alleged that, after he was pepper sprayed by Corcoran COs on February 19, 2019, Plaintiff was denied decontamination, but he did not name Defendants Thompson, Houston, or Schomaker. (*Id.*) He did not name any particular mental health/medical staff in the appeal.

However, during an interview, Plaintiff indicated that "Psychiatric Technician Robinson," later identified as Registered Nurse Rabaino-Burns, did not adequately record his injuries caused by his self-cutting incident and did not provide de contamination or treatment for his serious wounds. (*Id.*)  This appeal was denied at the institutional level on November 8, 2019, and at the headquarters level on February 14, 2020, thereby exhausting his claim. (Abernathy Decl., ¶¶ 10–11, Exh. 2, Doc. 97-1 at 45–46, 35–36.)

On February 22, 2019, Plaintiff filed a health care grievance, Tracking No. SATF HC 19000289. (*Id.*, ¶ 12, Exh. 3, Doc. 97-1 at 56–57.)  Plaintiff alleged that Dr. Church and Dr. Maravilla were on the IDTT team that discharged Plaintiff from the MHCB level of care to the EOP level of care on February 22, 2019. (*Id.*, ¶ 12.)  The grievance was denied at the institutional level on April 17, 2019, and denied and exhausted at the headquarter level on August 21, 2019. (*Id.* at 58–59, 53–55.)  In this grievance, Plaintiff did not name Defendants Houston, Thompson, and Schomaker or challenge the decisions of the IDTT team on February 19, 2019. (*Id.*, ¶ 12.)

As of March 11, 2019, Plaintiff had not received a response to any of the separated grievances. (Mendez Decl., ¶ 13; Abernathy Decl., ¶ 11.)  The three separated grievances and the additional health care grievance were each appealed to the final level of review and therefore exhausted, but after the complaint was filed on March 4, 2019.

**B.    Plaintiff's Form 22 of March 5, 2019**

Plaintiff filed a response in opposition to Defendants' motion for summary judgment, supported by his verified complaint and declaration. (Docs. 1, 99 at 19–21.)  Plaintiff argues generally that Defendants' actions rendered administrative remedies unavailable. (*See* Docs. 10 at 3.)

In his response to Defendants' motion, Plaintiff states that "on March 5, 2019, Plaintiff attached a health care grievance to [CDCR] Form 22 . . . ."[7] (Doc. 99 at 4.)  Plaintiff's grievance alleged retaliatory discharge from the MHCB on February 19, 2019, by Defendants

---

[7] Although the Form 22 was submitted by Plaintiff, the attached health care grievance does not appear as part of the exhibit.

1    Thompson, Houston, and Schomaker. (Doc. 99 at 3.)  RN Daugherty received Plaintiff's

2    grievance on March 7, 2019; a response was due within thirty days, or by April 8, 2019. (*Id.* at

3    5.)  Plaintiff states that he never received an answer, response, or reply; therefore, the

4    administrative remedies were unavailable to him before filing the complaint. (*Id.* at 6 (quoting

5    *Andres v. Marshall*, 854 F.3d 1103 (9th Cir. 2017), *amended and superseded*, 867 F.3d 1076

6    (9th Cir. 2017).)  Plaintiff alleges that the grievance was mishandled through machination and

7    misrepresentations intended to deny him relief. (*Id.* at 9.)

8        **C.**    **Failure to Exhaust**

9        The allegations in Plaintiff's complaint and response, including exhibits, do not raise

10   issues of fact that would preclude summary judgment.  The record in this case, when taken as a

11   whole, could not lead a rational trier of fact to find for the nonmoving party. *See Matsushita*, 475

12   U.S. at 586 (citing *First Nat. Bank.*, 391 U.S. at 287).  Under these circumstances, Rule 56(e)

13   authorizes the Court to consider the facts as undisputed for purposes of the motion or grant

14   summary judgment if the motion and supporting documents show that the defendants are entitled

15   to summary judgment.  Fed. R. Civ. P. 56(e).

16       By Plaintiff's allegations, on February 25, 2019, Plaintiff filed a grievance that was

17   separated into different claims; he filed a health care grievance against Defendants on February

18   22, 2019; and on March 7, 2019, he submitted a Form 22 and grievance, which were not

19   processed by prison officials.  Because the regulations provided thirty days for CDCR's

20   response, the responses to these grievances were due on March 27, 2019; March 25, 2019; and

21   April 8, 2019, respectively.

22       The factual disputes over whether Plaintiff actually submitted a grievance on March 7,

23   2019, and whether Defendants failed to process the grievance, thereby rendering the

24   administrative remedies unavailable, are not material.  For purposes of this motion, the Court

25   accepts as true Plaintiff's allegations that he prepared the grievance on March 5, 2019, and that it

26   was received by a prison official on March 7, 2021.  This grievance was prepared and submitted

27   after the filing of the complaint on March 4, 2019.  Therefore, Plaintiff did not wait for his

28   grievances to be reviewed and instead filed this action prematurely.

At any time, Plaintiff could have sought leave of court to amend his complaint to reflect exhaustion of each of his claims, particularly after the Court brought the issue of exhaustion to Plaintiff's attention in its Order to Show Cause issued on September 30, 2019.  (*See* Doc. 9, *vacated*, Doc. 13.)  He did not do so.  Viewing the evidence in a light most favorable to Plaintiff and resolving all doubt in his favor, the Court finds that Plaintiff filed the complaint prior to exhausting his administrative remedies.  Therefore, the complaint is subject to dismissal without prejudice.  *See Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

## IV.  CONCLUSION

For the foregoing reasons, it is HEREBY RECOMMENDED:

1. Defendants' motion for summary judgment (Doc. 97) be GRANTED; and

2. The case be DISMISSED WITHOUT PREJUDICE.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **December 5, 2022**                                    _____
                                                                                        UNITED STATES MAGISTRATE JUDGE

14